# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

DON LEAKE,

    Petitioner,

v.

RICHARD GRAHAM, *Warden*, and
MARYLAND ATTORNEY GENERAL,

    Respondents.

Civil Action No. TDC-17-0813

## MEMORANDUM OPINION

Petitioner Don Leake, an inmate at Roxbury Correctional Institution in Hagerstown, Maryland, has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in which he challenges his 2004 convictions for second-degree murder, manslaughter, and use of a handgun in the commission of a crime of violence. The Petition is fully briefed. Upon review of the submitted materials, the Court finds no need for an evidentiary hearing. *See* Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; D. Md. Local R. 105.6. For the reasons set forth below, the Petition will be DENIED.

## BACKGROUND

The Petition collaterally attacks Leake's conviction in the Circuit Court for Prince George's County, Maryland based on the August 22, 2002 shooting of Anthony Spencer after an argument between Leake and Spencer over money. At the trial, three eyewitnesses testified that Leake shot Spencer. James Drummond, a neighbor of Spencer, who also knew Leake, testified that on the day of the shooting, Leake came to his house before dusk, and Drummond's daughter

braided Leake's hair. After his hair was braided, Leake went to Spencer's house, and Drummond observed them standing in the street talking. He heard Spencer call to him, "Hey, Dee, come here before I hurt this motherfucker." 9/7/04 Trial Tr. at 166, Answer Ex. 2, ECF No. 5-2. As Drummond began to walk toward Leake and Spencer, he turned briefly because he thought someone had called to him from his house, heard a gunshot, and then looked back to see Spencer on the ground and Leake walking up the street holding a "small gun, a small snub-nose something like that." *Id.* at 147. Drummond went into his house and called 911.

Janet Lee Kyle, who lived next door to Drummond and was a friend of Spencer, testified that she saw Leake earlier on the day in question, and that Leake told her that Spencer "owed him $20, and if he didn't give him his $20, he was going to bust him." 9/8/04 Trial Tr. at 13, Answer Ex. 3, ECF No. 5-3. Later that day, after Leake had his hair braided, Kyle saw Leake knock on Spencer's door. A few minutes later, Kyle observed the two men arguing in the street. Kyle testified that it appeared that Spencer pushed Leake back in order to avoid being hit. According to Kyle, after Leake said that he wanted his money "now," Spencer turned away, and Leake shot him in the back of his head. *Id.* at 18. Kyle testified that she did not observe Spencer make any movements toward Leake and that it appeared to her as though Spencer was returning to his house.

Darrell Foremar, Drummond's brother-in-law, testified that he was at Drummond's house that day and saw Leake knock on Spencer's door, and a few minutes later the two men were in the middle of the street arguing. He saw Leake hit Spencer, but Spencer did not fight back. Rather, Spencer tried to block Leake's punches. When Foremar turned away briefly to look at Kyle, next door, he heard a shot but did not actually observe the shooting. Foremar testified that he had not seen Spencer with a weapon and had not seen him moving toward Leake. Rather, he testified that after the shooting he saw Leake "walking down the street with the gun in his hand." *Id.* at 33.

2

Leake was arrested and interviewed by detectives of the Prince George's County Police Department. At first, Leake denied any knowledge of the shooting. He later admitted that he shot Spencer but claimed that he acted in self-defense. Leake stated that he and Spencer had been fighting over money Spencer owed him, and when Spencer "stepped in my face," he hit Spencer first. *Id.* at 65. According to Leake, Spencer threatened him and appeared to be reaching for a weapon in his waistband, so he shot him.

At trial, the autopsy report on Spencer was admitted without the testimony of the medical examiner. The parties stipulated that if the medical examiner testified, "he would testify to the contents of the autopsy report." *Id.* at 8. The jury was instructed that they could consider the report in its deliberations.

In closing argument, defense counsel argued that Leake acted in self-defense. In support of this argument, defense counsel referenced Spencer's statement to Drummond to "come get this motherfucker before I hurt him," Leake's statement to the police that he had seen Spencer reach into his waistband, which caused him to fear that Spencer was going to harm him, and the fact that Leake had previously been the victim of a shooting. 9/9/14 Trial Tr. at 38, Answer Ex. 4, ECF No. 5-4. Defense counsel also highlighted that the autopsy report stated that Spencer "was shot in the left side of his head, toward the back" and that "the path of the bullet went left to right, front to back." *Id.* at 44. She argued to the jury that the identified trajectory was consistent with Spencer reaching for something rather than turning to leave the scene because, "If you are shooting someone from behind, it's not going to be front to back, it's going to be back to front." *Id.* In rebuttal, the prosecutor explained the autopsy report by stating that where a bullet can move around once inside the body, it could "move from front to back, left to right." *Id.* at 46. The prosecutor

3

instead focused on the witness testimony that Leake was the aggressor, that Spencer had turned away, and that Leake was the only one seen with a gun.

On September 9, 2004, the jury convicted Leake of second-degree murder, manslaughter, and use of a handgun in the commission of a crime of violence. The manslaughter conviction merged into his second-degree murder conviction at sentencing. Leake was sentenced to 30 years of imprisonment on the second-degree murder conviction and 20 years, with all but 15 years suspended, for the handgun conviction, to be served consecutively to the sentence imposed for second-degree murder. His total sentence was therefore 45 years of imprisonment.

On direct appeal, with the assistance of counsel, Leake asserted the following arguments: (1) the trial court erred in declining to instruct the jury concerning the defense of mistake of fact; (2) the trial court abused its discretion in denying the defendant's motion for mistrial; and (3) the evidence was insufficient to sustain the defendant's conviction for use of a handgun in the commission of a crime of violence. The Maryland Court of Special Appeals affirmed the conviction on July 17, 2006. Leake did not file a petition for a writ of certiorari in the Maryland Court of Appeals.

On August 7, 2006, Leake filed a self-represented petition for post-conviction relief in which he asserted ineffective assistance of counsel. In a supplemental petition filed though counsel on August 25, 2010, Leake asserted a single issue: whether trial counsel was ineffective for failing to object on the grounds that the second-degree murder and manslaughter convictions constituted inconsistent verdicts. On June 28, 2011, Leake filed a self-represented supplemental petition raising additional issues, including whether trial counsel was ineffective in failing to call the medical examiner as a witness.

On May 16, 2012, the state post-conviction court held a hearing on the petition. On the issue of the failure to call the medical examiner as a witness, Leake's trial counsel testified:

> I had the autopsy, part of the autopsy. And if you want to talk about why we didn't have the doctor there, is the very fact that I did not want a doctor to explain why things were inconsistent. As long as it's said that the wound was from the back – I mean from the front to the back, my whole theory that the two of them were standing there, that the victim turned like this to grab for something, turned back and that's when the gun was shot.
>
> Had it been back to front, which was the State's theory that as he was walking away, he got shot, we would have a real problem with trying to say it was a preemptive strike. So I believe there was some testimony from some of the civilians that this guy had been reaching for something in his pocket or looking for something and turned slightly, which is why I think the autopsy might have different—actually, I don't know why he had it. I was very pleased that I was able to find in the autopsy the fact the gunshot went front to back which did not—was not consistent with the State's theory that this man was walking away when Dan shot him.

State Post-Conviction Hrg. Tr. at 22, Answer Ex. 10, ECF No. 10-1.

Trial counsel further testified that the reference that the path of the bullet wound was "front to back" was cited several times in the autopsy report and "was favorable to us." *Id.* at 23. She explained that she therefore agreed to have the report admitted as evidence. However, she noted that there were inconsistencies on this point in the report, so she did not want the medical examiner to testify and possibly refute her argument that the bullet went into Spencer from the front, which would be consistent with her self-defense theory:

> Q: And that's why you admitted the autopsy report?
> A: I admitted it because I did not want someone to be able to explain why there might have been an inconsistency.
> Q: So you say it was inconsistent in the autopsy report?
> A: Well, I think there's somewhere in the autopsy where it says that the bullet entered the back and came out the front or there was something in reference to it being back to front. That was very bad for our defense.

\* \* \*

> Q: To be clear, I just want to make it clear ... the autopsy report says the gunshot wound entrance was the back of the head, however, the path was front to back?
> A: Well, that doesn't make sense.
> Q: No, no, no.
> A: And that's the problem. It doesn't make sense. That's exactly what it said. And my fear was, and this was totally strategic on my part, where if we had someone able to explain that, I lost my ability to argue that. And, clearly, in my opinion, it was successful because he was not convicted of first degree murder.

*Id.* at 23-24.

On August 20, 2012, the state post-conviction court denied the petition. Leake filed a timely application for leave to appeal the denial of post-conviction relief, which was denied on February 13, 2017.

## DISCUSSION

In his federal Petition for a Writ of Habeas Corpus Leake asserts that his conviction and sentence should be set aside because: (1) trial counsel was ineffective for failing to call the medical examiner who wrote the autopsy report as a witness; and (2) trial counsel was ineffective for failing to object to inconsistent verdicts. Respondents argue that the state post-conviction court correctly concluded that trial counsel's decision not to call the medical examiner was a matter of legal strategy and was not ineffective assistance of counsel, and that the state post-conviction court's denial of Leake's claim relating to inconsistent verdicts was based on state law and did not violate clearly established federal law.

## I. Legal Standards

A federal petition for a writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a) (2018). The federal habeas statute sets forth a highly deferential standard for evaluating state court rulings, under which state court

decisions are to "be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005); *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997). A federal court may not grant a writ of habeas corpus unless the state court's adjudication on the merits (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). "[A] a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S 766, 773 (2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 411 (2000)). The state court's application of federal law must be "objectively unreasonable." *Id.* Furthermore, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (citation omitted). The fact that "reasonable minds reviewing the record might disagree about the finding in question" is not enough to deem a state court's factual determination unreasonable. *Id.*

The Sixth Amendment to the United States Constitution affords a criminal defendant the right to "Assistance of Counsel." U.S. Const. amend. VI. The Supreme Court has stated that "assistance which is ineffective in preserving fairness [of a trial] does not meet the constitutional mandate." *Mickens v. Taylor*, 535 U.S. 162, 166 (2002). A petitioner alleging ineffective assistance of counsel in violation of the Sixth Amendment must ordinarily meet the standard established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under this standard, the petitioner must show both deficient performance and prejudice—that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the

7

Sixth Amendment," *id.* at 687, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

On the issue of deficient performance, a defendant must show "that counsel's representation fell below an objective standard of reasonableness." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). "Judicial scrutiny of counsel's performance must be highly deferential" and not based on hindsight. *Strickland*, 466 U.S. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Under the Sixth Amendment, a defendant "has a right to effective representation, not a right to an attorney who performs his duties 'mistake-free.'" *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1910 (2017) (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147 (2006)).

On the issue of prejudice, "[t]he essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman*, 477 U.S. at 374. Thus, in order to prevail, the petitioner must show "that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 375. A determination whether the attorney's performance was deficient need not be made if it is clear that there was no prejudice. *See Strickland*, 466 U.S. at 697.

"The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

## II. Medical Examiner

Leake argues that his trial counsel was ineffective for failing to call the medical examiner who completed Spencer's autopsy as a trial witness in order to demonstrate that the angle of the wound supported Leake's contention that he shot Spencer in self-defense. Specifically, Leake points to the statement in the medical examiner's autopsy report that the bullet traveled "front to back," which was apparently inconsistent with the State's eyewitness testimony "that the bullet traveled back to front." Pet. at 6, ECF No. 1. In rejecting this claim, the state post-conviction court described Leake's argument as follows:

> Petitioner argued that if the medical examiner was called, he could have further clarified the autopsy report which contained inconsistencies. Specifically it reported a front to back bullet path to support Petitioner's contention that he shot the victim in the front of the head in self defense. Petitioner also believed this would help refute the State's holding that Petitioner shot the victim in the back of the head after the victim turned to walk away.

State Post-Conviction Op. at 10, Pet. Ex. 1, ECF No. 1-2.

The post-conviction court concluded, however, that trial counsel's decision not to call the medical examiner was a tactical decision based on the determination that while the language of the report itself was consistent with the defense theory, the medical examiner's testimony might clarify the report language in a way that would undermine this theory. The court found:

> At the hearing, Trial Counsel testified that she made a tactical decision not to call the medical examiner, explaining that the autopsy report indicating a front to back pathway was consistent with Petitioner's story but if the Medical Examiner were called to testify he might testify to the contrary. Additionally, it would be to Petitioner's advantage to not have the inconsistencies explained. Consequently, Trial Counsel chose not to call the medical examiner. This Court is persuaded that Trial Counsel had a sound tactical reason for choosing not to call the medical examiner.

*Id.* at 10.

Upon review of the record, this Court finds that the post-conviction court correctly found that trial counsel's rationale for declining to call the medical examiner was a reasonable trial strategy under the circumstances. As noted by trial counsel, the autopsy report specifically states that the wound path was "directed from left to right and front to back," but it also contained the arguably conflicting conclusion that entrance wound was "to the left side of the back of the head." Autopsy Rep. at 1-2, Pet. Ex. 3, ECF No. 1-4. Under these circumstances, trial counsel's stated "fear" that if "we had someone able to explain that," she might lose the "ability to argue" that Spencer was shot from the front, Post-Conviction Tr. at 24, ECF No. 10-1, was a reasonable concern supporting her trial strategy. Indeed, in closing arguments, defense counsel argued that the autopsy showed that Spencer was shot from the front. Notably, the prosecutor did not try to refute this point and argue that the autopsy showed that Leake was shot from the back; rather he primarily focused on the eyewitness testimony to respond to the self-defense claim. Accordingly, the decision to agree with the prosecution that the autopsy report could be admitted as evidence, but that no witnesses would be offered to interpret the report, was reasonable and not deficient performance. In the absence of deficient representation under *Strickland*, it was reasonable for the post-conviction court to reject Leake's claim that his trial counsel was ineffective in failing to call the medical examiner as an expert witness. *See* 28 U.S.C. § 2254(d).

### III. Inconsistent Verdicts

At trial, the jury found Leake not guilty of first-degree murder but guilty of second-degree murder and manslaughter. Leake contends that this result presented an impermissible inconsistent verdict, and that his trial counsel was ineffective in failing to object to the verdict. Under Maryland law, second-degree murder is the killing of another person without legal justification, excuse or mitigation, and with either the intent to kill or the intent to inflict grievous bodily harm. *Banks v.*

*State*, 608 A.2d 1249, 1257 (Md. Ct. Spec. App. 1992) (citing *Tate v. State*, 203 A.2d 882, 884-85 (Md. 1964)). Voluntary manslaughter "is a killing that would otherwise be second degree murder but for the presence of a mitigating circumstance," which can include "a subjectively honest but objectively unreasonable belief" by the defendant "that he was in deadly peril." *Id.* at 1257-58. "The absence of mitigation is presumed, unless the defendant produces some evidence to make mitigation an issue in the case," at which point "the State has the burden to proving the absence of mitigating circumstances." *Id.* at 1258. Leake argues that he could not logically be found guilty of both second-degree murder and manslaughter, and that he was prejudiced by trial counsel's failure to object because he received a 30-year sentence for the second-degree murder conviction, which is higher than the statutory maximum sentence of ten years for voluntary manslaughter.

At the post-conviction hearing, trial counsel testified that she did not object to the verdict because she believed that manslaughter was a lesser included offense of second-degree murder and that both manslaughter and second-degree murder were both lesser included offenses of first-degree murder, of which Leake was found not guilty. The post-conviction court concluded that while trial counsel might have erred in her understanding of lesser included offenses, Leake suffered no prejudice. In so ruling, the court relied on *Bell v. State*, 150 A.2d 908 (Md. 1959), and *Dickens v. State*, 927 A.2d 32 (Md. Ct. Spec. App. 2007). In *Bell*, the Maryland Court of Appeals ruled that although when there are inconsistent verdicts, the defendant has a right to require the trier of fact to specify on which count he is guilty, there was no prejudice where only one sentence was imposed. *Bell*, 150 A.2d at 912. In *Dickens*, the defendant was convicted by a jury of first-degree murder, second-degree murder, involuntary manslaughter, use of a handgun in the commission of a felony, and wearing or carrying a handgun. *Dickens*, 927 A.2d at 34. The trial court imposed a sentence of life imprisonment for the first-degree murder conviction and a

consecutive 20-year prison sentence for use of a handgun in the commission of a felony, but no sentences were imposed on the second-degree murder or involuntary manslaughter charges. *Id.* The court held, citing *Bell*, that there was no prejudice to the defendant because he "was not subjected to multiple punishments based on the inconsistent verdict." *Id.* at 40. Although the *Dickens* court referenced *Bell* and subsequent case law for the proposition that no prejudice results from a single sentence on inconsistent verdicts when it "was within the penalty prescribed for either of the offenses," it nevertheless found no prejudice even though the sentence on first-degree murder of life imprisonment exceeded the maximum penalty on involuntary manslaughter. *See id.* at 34, 40; Md. Code Ann., Crim Law § 2-207(a)(1) (stating that the maximum penalty for manslaughter is 10 years of imprisonment).

The present case is factually comparable to *Dickens*. Here, Leake was sentenced on only the second-degree murder conviction and did not receive any separate sentence on the manslaughter conviction. Consequently, the post-conviction court's determination that Leake was not prejudiced by the inconsistent verdict because he was not subjected to multiple punishments is a reasonable application of *Dickens*. Although one could question whether *Dickens* appropriately extended *Bell* to a case in which the sentence imposed exceeded the maximum penalty on the lesser offense, this Court cannot find the state post-conviction court's reliance on *Dickens* was an unreasonable application of the law, particularly where it relied entirely on state law.

Moreover, even if such an interpretation of state law were incorrect, there would be no basis to grant the Petition. Federal habeas review is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions."). "Matters of State law not involving federal constitutional issues are not appropriate grounds for federal habeas corpus relief." *Hailey v. Dorsey*, 580 F.2d 112, 115 (4th Cir. 1978). A violation of state law is cognizable in federal habeas corpus proceedings only if it amounts to a "fundamental defect which inherently results in a complete miscarriage of justice." *Id.* (quoting *Hill v. United States*, 368 U. S. 424, 428 (1962)). Here, any alleged violation is limited to one of state law. The United States Supreme Court has held that as a matter of federal law, inconsistent verdicts are acceptable and do not violate the United States Constitution. *See United States v. Powell*, 469 U.S. 57, 65 (1984) (citing *Dunn v. United States*, 284 U.S. 390 (1932)). In *Powell*, the Court held that even when verdicts "could not be rationally reconciled," there is no basis to vacate the defendant's conviction, as it cannot be determined which inconsistent verdict is incorrect. *Id.* at 69. Accordingly, regardless of whether these inconsistent verdicts ran afoul of state law, they did not constitute an unreasonable application of clearly established federal law or a fundamental defect resulting in a miscarriage of justice. *See* 28 U.S.C. § 2254(d); *Hailey*, 580 F.2d at 115. The Petition will therefore be denied as to issue of inconsistent verdicts.

## IV. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" on a § 2254 petition. Because the accompanying Order is a final order adverse to the applicant, Leake must receive a certificate of appealability before an appeal may proceed. 28 U.S.C. § 2253(c)(1).

When a district court rejects constitutional claims on the merits, a petitioner satisfies the standard by demonstrating that "jurists of reason could disagree with the district court's resolution

13

of [the] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). Here, Leake's claims are dismissed on the merits. Upon review of the record, this Court finds that Leake has not made the requisite showing. The Court therefore declines to issue a certificate of appealability. Leake may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See* Fed. R. App. P. 22(b); *Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

## CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus will be DENIED. The Court declines to issue a certificate of appealability. A separate Order shall issue.

Date: January 28, 2020

THEODORE D. CHUANG
United States District Judge